531 F.2d 1240
 PHILADELPHIA COMMUNITY CABLE COALITION et al., Petitioners
in No. 75--1293,
v.
FEDERAL COMMUNICATIONS COMMISSION, and United States of
America, Respondents, North Philadelphia Cable
Television Corporation and Philadelphia
Cable Television Company, Intervenors.
PHILADELPHIA COMMUNITY CABLE COALITION, Petitioner in No. 75--1700,
v.
FEDERAL COMMUNICATIONS COMMISSION, and the United States of
America, Respondents, North Philadelphia Cable
Television Corporation and Philadelphia
Cable Television Company, Intervenors.
 Nos. 75--1293, 75--1700.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 12, 1976.
Decided March 19, 1976.
 
 Curtis T. White, Charles M. Firestone, Washington, D.C., for petitioners.
 Ashton R. Hardy, Gen. Counsel, Daniel M. Armstrong, Acting Associate Gen. Counsel, David L. Kuhns, Counsel, Nancy B. Carey, Counsel, Federal Communications Commission, Washington, D.C., Thomas E. Kauper, Asst. Atty. Gen., Carl D. Lawson, Atty., Dept. of Justice, Washington, D.C., for respondents.
 David C. Jatlow, Smith & Pepper, Washington, D.C., for intervenors.
 ON PETITION TO VACATE AND SET ASIDE AN ORDER OF THE FEDERAL COMMUNICATIONS COMMISSION
 Before ALDISERT, GIBBONS and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM.
 
 
 1
 We have considered the various contentions raised by the petitions to vacate and set aside orders of the Federal Communications Commission. While we deny the petitions, we are constrained to express our concern that the FCC has no rules t regulate transfers of ownership of cable television franchises. The possibility of 'trafficking' in franchises, therefore, is very real.
 
 
 2
 At present the FCC has delegated these matters to the local authorities--the City of Philadelphia, in these cases--under the FCC's structured dualism approach to cable regulation. We have been advised by brief and at oral argument that the FCC now has under active consideration the question whether it should undertake to regulate transfers. Clarification of the Cable Television Rules and Notice of Proposed Rulemaking and Inquiry, 46 F.C.C.2d 175, 198--99 (1974). Thus, there is some indication that the FCC will promulgate rules or insist that the local authorities do so. There is a serious question whether such delegation is consistent with the duties of the Commission under § 310(b) of the Communications Act, 47 U.S.C. § 310(b). Cf. Crowder v. F.C.C., 130 U.S.App.D.C. 198, 399 F.2d 569, 571--73, cert. denied, 393 U.S. 962, 89 S.Ct. 400, 21 L.Ed.2d 375 (1968). Were a broadcast station implicated, the provisions of 47 C.F.R. § 1.597(d) would come into play, requiring a careful examination of transfer and assignment applications' on a case-to-case basis, to determine whether any characteristics of trafficking remain.' We will not disturb the Commission's conclusions on trafficking because the franchises in issue here expire on December 12, 1976. During the processing of franchise renewal applications, questions presented on these petitions as to ownership and acquisition thereof may be presented.
 
 
 3
 We will deny the petition of Philadelphia Community Cable Coalition, Synapse Communications Collective, Inc., Concerned Communications, Inc., Ralph M. Moore, Jr., Leanne Smith Keys, and John F. O'Rourke at No. 75--1293 for the reasons set forth by the Commission. Philadelphia Cable Television Co., 49 F.C.C.2d 274 (1974), on reconsideration, 51 F.C.C.2d 530 (1975). Similarly, we will deny the petition of Philadelphia Cable Coalition at No. 75--1700 for the reasons set forth by the Commission. North Philadelphia Cable Television Corp., 53 F.C.C.2d 600 (1975).
 
 
 4
 Costs taxed against petitioners.
 
 
 5
 ROSENN, Circuit Judge (concurring).
 
 
 6
 I join the majority's disposition of these cases and its expression of concern about the trafficking issue. I write to express another concern--that the Commission's actions may constitute an abuse of its rule-making process.
 
 
 7
 The Commission's current regulatory scheme for cable television systems originated with its Cable Television Report and Order, 36 F.C.C.2d 143 (1972). The Order established a 'dual jurisdiction' of cable television regulation. Local municipal governments franchise cable operators, delineate local service areas, and fashion regulatory programs suited to local needs. The Commission, on the other hand, established minimum criteria, 47 C.F.R. § 76.31, with which the local franchising authorities must comply. The FCC's role is limited to satisfying itself that its criteria are met and that the applicant is otherwise qualified, at which point it grants a certificate of compliance.
 
 
 8
 The FCC subsequently reconsidered its regulations and stated that for franchises granted before promulgation of the rules, only 'substantial compliance' with the rules would be required until March 1977 or the expiration of the current franchise period, whichever occurred first. Reconsideration of Cable Television Report and Order, 46 F.C.C.2d 326, 366 (1972). This change was incorporated into the rules. 47 C.F.R. § 76.31(6). Later FCC decisions stated that 'substantial compliance' would be given a liberal construction and the Commission would deny certification only in the 'extreme case' of deviance from its franchise standards. CATV of Rockford, Inc., 38 F.C.C.2d 10, 15--16 (1972). In Comcast Corporation, 42 F.C.C.2d 420, 422 (1973), the Commission stated that only where a cable franchise was 'flagrantly violative' of the rules would a certificate be denied.
 
 
 9
 The primary thrust of petitioners' attack is based on one of the Commission's minimum standards, 47 C.F.R. § 76.31(a)(1), which requires for certification that:
 
 
 10
 The franchisee's legal, character, financial, technical, and other qualifications, and the adequacy and feasibility of its construction arrangements, have been approved by the franchising authority as part of a full public proceeding affording due process.
 
 
 11
 The petitioners contend that corporate control over the intervenors has been effectively transferred to another entity. Communications Properties, Inc. (CPI) of Austin, Texas, which now controls, according to petitioners, three of the six Philadelphia cable franchises. Since control has been transferred, petitioners in effect argue that CPI is now the franchisee and its qualifications have not been publicly examined as required by section 76.31(a) (1). Thus, petitioners conclude, the franchises are not in actual or substantial compliance, and the dilution of the substantial compliance doctrine to allow certification of these franchises is an arbitrary, capricious, and unreasonable abuse of discretion.[1]
 
 
 12
 The FCC opinions[2] in these cases address this issue in only a summary fashion. The Commission only stated:
 
 
 13
 The Rules require public proceedings in connection with the franchising process. At the present time they do not require a public proceeding prior to the transfer or assignment of a franchise. Therefore, assuming arguendo that there had been a transfer of control . . . there was no violation of the Commission's Rules.
 
 
 14
 51 F.C.C.2d at 531.
 
 
 15
 What this simplistic treatment of petitioner's claim ignores is that not requiring that a franchise transferee be examined at a public hearing renders the hearing afforded the initial franchisee a meaningless charade. Stretching 'substantial compliance' to include this situation makes section 76.31(a)(1) a nullity. Certainly, the Commission is free to adopt whatever policies it determines best serve the public convenience, interest, or necessity, 47 U.S.C. § 307, and need not require any public hearing at all. But once the Commission announces a policy and embodies it in a rule, it cannot disregard its own regulation. See, e.g., Nader v. Nuclear Regulatory Commission, 513 F.2d 1045, 1051 (D.C. Cir. 1975). Furthermore, while the Commission may interpret its rules as part of its adjudicatory process, see 1 Davis, Administrative Law Treatise, § 5.01, p. 292 (1958), standards such as the 'extreme case' or 'flagrantly violative' hardly provide parties and reviewing courts with any understanding of the Commission's policy. Such vague standards eviscerate the rule and create a potential for arbitrary action.
 
 
 16
 Despite these reservations, I agree that denial of the petition is appropriate. Our scope of review under 5 U.S.C. § 706 is very limited. I am not convinced that the Commission's decision in the instant case is arbitrary, capricious, or an abuse of discretion. Also, the Commission has informed us that the trafficking issue is under consideration, and if the courts intervene at all, they should not act until the Commission has had a reasonable opportunity to address the issue. Furthermore, any action we might take can have only limited practical value in light of the December franchise renewal date, when purportedly the franchises must comply strictly with the regulations.
 
 
 
 [1]
 The Commission and intervenors dispute petitioners' premise that control has been transferred. For purposes of this opinion, the complexities of these corporate arrangements need not be examined
 
 
 [2]
 The relevant FCC decisions are reported at 49 F.C.C.2d 274 (1974); 51 F.C.C.2d 530 (1975); 53 F.C.C.2d 600 (1975)